[Cite as *Zibaie v. Zibaie*, 2024-Ohio-1140.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Ashley N. Zibaie, | : | |
| Plaintiff-Appellant, | : | No. 23AP-87 |
| | | (C.P.C. No. 18DR-4144) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Cyrus A. Zibaie, | : | |
| Defendant-Appellee. | : | |
| Ashley N. Zibaie, | : | |
| Plaintiff-Appellant, | : | No. 23AP-484 |
| | | (C.P.C. No. 18DR-4144) |
| v. | : | |
| | | (ACCELERATED CALENDAR) |
| Cyrus A. Zibaie, | : | |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on March 26, 2024

**On brief:** *Ashley N. Zibaie*, pro se.

APPEALS from the Franklin County Court of Common Pleas,
Division of Domestic Relations

LUPER SCHUSTER, J.

{¶ 1} In these coordinated cases, plaintiff-appellant, Ashley N. Zibaie, pro se, appeals from a judgment entry/decree of divorce of the Franklin County Court of Common Pleas, Division of Domestic Relations, granting sole legal custody of the minor children to defendant-appellee, Cyrus A. Zibaie. Ashley additionally appeals from a judgment entry of

the trial court finding her to be in contempt of court and ordering her to be sentenced to 27 days in jail.  For the following reasons, we affirm both judgments.

## I.  Facts and Procedural History

{¶ 2}  Ashley and Cyrus were married September 7, 2012 and have two minor children.  On November 2, 2018, Ashley filed a complaint for divorce.  Cyrus filed an answer and counterclaim for divorce on November 15, 2018.  Pursuant to Civ.R. 75(N), the parties entered into an agreed upon temporary order on December 17, 2018 under which the magistrate ordered both Ashley and Cyrus to be designated the temporary residential parent and legal custodian of the children.  The magistrate further ordered the parties be granted parenting time pursuant to a specific schedule.

{¶ 3}  Subsequently, on September 10, 2019, the magistrate issued another temporary order modifying the parties' parenting time.  The temporary order provided Cyrus with parenting time from Sundays at 6:00 p.m. until Wednesdays at 6:00 p.m., provided Ashley with parenting time from Wednesdays at 6:00 p.m. until Fridays at 6:00 p.m., and provided for alternating weekends for each parent.  On December 28, 2021, Cyrus filed a motion for an order to find Ashley in contempt of the temporary order on grounds that Ashley refused to provide him parenting time and had withheld the children from him for two weeks.  Following a May 18, 2022 hearing on the motion, the magistrate issued a decision on May 25, 2022 finding Ashley in contempt and sentencing Ashley to 30 days in jail unless she purged her contempt. The decision provided Ashley could purge her contempt by providing Cyrus with 14 days of make-up parenting time as well as the entirety of the children's 2022-23 school year winter break and by paying Cyrus $1,500 for attorney fees and costs associated with the contempt action. Ashley filed objections to the magistrate's decision, and the matter was stayed pending the divorce decree.

{¶ 4}  Beginning June 1, 2022, the trial court conducted a full evidentiary hearing. Subsequently, in a January 13, 2023 judgment entry/decree of divorce, the trial court ordered Cyrus to be the sole legal custodian and residential parent of the minor children. The trial court further ordered Ashley to have parenting time pursuant to Loc.R. 27, Option C, of the Franklin County Domestic Relations Court, which provides for alternating weekends from Friday at 6:00 p.m. until Monday at 6:00 p.m. and one weekday overnight

per week. Additionally, the trial court ordered Ashley to pay $672.37 per month in child support.

{¶ 5} Within the divorce decree, the trial court also affirmed the May 25, 2022 magistrate's decision finding Ashley in contempt, noting Ashley failed to prosecute her objections at trial and did not support credible testimony to support her claim. On May 19, 2023, Cyrus filed a motion to enforce jail sentencing, asserting Ashley had not complied with either of the directives by which she could purge her contempt. Ashley filed a memorandum contra on May 21, 2023 arguing she had provided Cyrus with make-up parenting time to purge her contempt. The trial court conducted a hearing on July 25, 2023 and found Ashley had not purged her contempt. In a July 25, 2023 entry, the trial court ordered Ashley to serve 27 days in jail.

{¶ 6} Ashley then filed a Civ.R. 60(B) motion for relief from judgment on August 2, 2023 in which she argued the trial court's entry erroneously found her in contempt rather than ruling on whether she had purged her contempt. On August 4, 2023, the trial court sua sponte issued an entry, pursuant to Civ.R. 60(A), to correct a clerical mistake in the July 25, 2023 entry. The trial court stated it had made an unintentional omission in the original entry and ordered the entry be corrected to read "Ashley N. Zibaie having appeared and having been previously found in contempt of Court, and having been found not to have complied with conditions of the related purge order, is ORDERED, ADJUDGED and DECREED to be sentenced to 27 days in the Franklin County Jail/Women's Correctional Institute as follows." (July 25, 2023 Jgmt. Entry.) The remaining terms of the July 25, 2023 entry remained unchanged.

{¶ 7} Ashley timely appeals from both the judgment entry/decree of divorce and from the July 25, 2023 entry and the August 4, 2023 amendments to that entry finding she had not purged her contempt.

## II. Assignments of Error

{¶ 8} Ashley assigns the following three assignments of error in case No. 23AP-87, involving the divorce decree, for our review:

> 1. The trial court erred by performing a Facebook search for
> Appellant and then making remarks on the record of the case
> that were so antagonistic as to make a fair ruling impossible,

thereby denying Appellant's constitutionally protected right to due process of law.

2. The trial court erred by failing the legal best interest standard while ignoring evidence of child abuse and child sexual abuse.

3. The trial court erred in other ways relating to the rules of evidence and the way in which the trial proceeded.

{¶ 9} Additionally, Ashley assigns the following four assignments of error in case No. 23AP-484, involving the contempt entry, for our review:

1. The trial court erred by refusing to disqualify, where the trial court made remarks on the record of the case that were so antagonistic as to make a fair ruling impossible, after performing a Facebook search of Appellant from the bench, thereby violating Appellant's constitutionally protected right to due process of law.

2. The trial court erred by making no finding as to whether Appellant purged her contempt before sentencing her to jail time.

3. The trial court erred by abusing Ohio Civil Rule 60(A) to alter the original entry in order to mitigate a basis upon which Appellant seeks relief.

4. The trial court erred by sentencing Appellant to jail against the manifest weight of the evidence.

## III. Divorce Decree First Assignment of Error – Due Process

{¶ 10} In her first assignment of error from the divorce decree, Ashley argues the trial court denied her due process of law. More specifically, Ashley asserts the trial court was unable to act impartially after the judge performed a Facebook search and made allegedly disparaging and antagonistic comments to her.

{¶ 11} "It is axiomatic that a ' " 'fair trial in a fair tribunal is a basic requirement of due process,' " ' and a 'biased decision maker is constitutionally unacceptable.' " *Ramsey v. Ramsey*, 10th Dist. No. 13AP-840, 2014-Ohio-1921, ¶ 72, quoting *Bailey v. Beasley*, 10th Dist. No. 09AP-682, 2010-Ohio-1146, ¶ 21, quoting *Withrow v. Larkin*, 421 U.S. 35, 46 (1975), quoting *In re Murchison*, 349 U.S. 133, 136 (1955.) However, a bare allegation of bias does not substantiate a claim of a violation of due process. *Id.*

{¶ 12} Here, the basis for Ashley's claim that the trial court could not act impartially in evaluating the case is that the trial court reviewed certain Facebook posts Ashley had made and, after having viewed those posts, admonished Ashley on the record. We note, however, that the trial court did not review Ashley's Facebook account as a means of gathering evidence on the merits of the divorce proceeding. Instead, counsel for Cyrus asked Ashley about various Facebook posts she had made, including posts that were disparaging of the guardian ad litem appointed for the children in the case. The trial court reviewed these Facebook posts, and Ashley, despite initially denying any involvement in the Facebook posts, admitted to writing or sharing them. The trial court informed Ashley her conduct bordered on harassment of the guardian ad litem and instituted a gag order to prohibit Ashley from posting anything on Facebook about the divorce proceedings or about the guardian ad litem.

{¶ 13} Cyrus moved to admit some of the Facebook posts into evidence. Ashley asserts the trial court deprived her of due process by reviewing her entire Facebook page instead of the limited posts Cyrus introduced into evidence. To the extent the trial court inspected Ashley's Facebook page beyond the exhibits introduced at trial, the trial court did not do so to determine the merits of the divorce proceedings but to take into account the safety of court personnel. *See Lupo v. Columbus*, 10th Dist. No. 13AP-1063, 2014-Ohio-2792, ¶ 20 ("trial courts have inherent authority to manage their own dockets and the cases before them"), citing *State ex rel. Charvat v. Frye*, 114 Ohio St.3d 76, 2007-Ohio-2882, ¶ 23. Thus, we do not agree with Ashley that the trial court violated her right to due process by conducting an independent investigation into the facts. Moreover, we do not agree with Ashley that the trial court made disparaging comments to her that would affect the trial court's impartiality. Instead, the trial court warned Ashley not to continue with her current behavior and informed her that if she continued to post on Facebook about the trial or the guardian ad litem, she would be held in contempt.

{¶ 14} Because Ashley does not demonstrate the trial court was biased or otherwise deprived her of due process, we overrule Ashley's first assignment of error from the divorce decree.

**IV. Divorce Decree Second Assignment of Error – Parenting Time**

{¶ 15} In her second assignment of error from the divorce decree, Ashley argues the trial court erred in allocating parenting time and determining Cyrus to be the sole legal custodian of the children. Ashley asserts the trial court ignored evidence of child abuse and child sexual abuse in making its determination of the best interest of the children.

{¶ 16} R.C. 3109.04 governs the allocation of parental rights and responsibilities for the care of children in a divorce proceeding. A determination of parental rights and responsibilities under R.C. 3109.04 is left to the sound discretion of the trial court. *Reese v. Reese*, 10th Dist. No. 22AP-309, 2023-Ohio-360, ¶ 8, quoting *Miller v. Miller*, 37 Ohio St.3d 71, 74 (1988) (" '[t]he discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned' "). We review the trial court's allocation of parental rights and responsibilities for an abuse of discretion. *Id.*, citing *Pallone v. Pallone*, 10th Dist. No. 17AP-409, 2017-Ohio-9324, ¶ 10. An abuse of discretion connotes a decision that is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983); *State ex rel. Deblase v. Ohio Ballot Bd.*, ___ Ohio St.3d ___, 2023-Ohio-1823, ¶ 27.

{¶ 17} Ashley argues the trial court abused its discretion in allocating parental rights and responsibilities because the trial court ignored evidence of child abuse and child sexual abuse. Under R.C. 3109.04(F)(1)(h), a trial court shall consider, as a relevant factor in determining the best interests of the children, "whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused or a neglected child." Ashley asserts she presented evidence of both physical and sexual abuse, but the trial court ignored that evidence in making its best interest determination. We do not agree.

{¶ 18} In the judgment entry/decree of divorce, the trial court specifically notes Ashley testified about her concerns that Cyrus abuses the children, both physically and sexually. The trial court noted that Ashley instituted three or four investigations of Cyrus by Franklin County Children Services due to her concerns but all the investigations were closed as unsubstantiated. Thus, we do not agree with Ashley that the trial court ignored her evidence of child abuse and child sexual abuse. Instead, the trial court considered her testimony on the matter and made a determination of the credibility and weight to afford

that testimony. We find no abuse of discretion in the trial court's determination of the appropriate weight to give this testimony. *Lumley v. Lumley*, 10th Dist. No. 09AP-556, 2009-Ohio-6992, ¶ 46 (in a determination under R.C. 3109.04, "assessment of the credibility and weight of the evidence is reserved for the trial court"), citing *Davis v. Flickinger*, 77 Ohio St.3d 415, 419 (1997). We also note that Ashley does not account for the remaining factors in R.C. 3109.04(F) or assert the trial court abused its discretion in determining the relative weight to assign to those factors. Accordingly, the trial court did not abuse its discretion in allocating parental rights and responsibilities under R.C. 3109.04. We overrule Ashley's second assignment of error from the divorce decree.

## V. Divorce Decree Third Assignment of Error – Additional Errors

{¶ 19} In her third and final assignment of error from the divorce decree, Ashley argues the trial court committed other errors throughout the trial. Under this assignment of error, Ashley does not identify any particular errors; rather, she asserts it is for this court to review the record and address any potential errors.

{¶ 20} Ashley's third assignment of error from the divorce decree does not comply with the requirements of App.R. 16. Pursuant to App.R. 16(A)(3), an appellant shall include in the brief "[a] statement of the assignments of error presented for review, *with reference to the place in the record where each error is reflected.*" (Emphasis added.) Additionally, an appellant is required to provide "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." App.R. 16(A)(7). Here, Ashley fails to articulate any particular errors under this assignment of error, let alone identify the portion of the record where those errors are reflected or identify any legal authority in support. "In an appeal to this court, '[t]he burden of affirmatively demonstrating error on appeal rests with the party asserting the error.' " *Morgan v. Ohio State Univ. College of Dentistry*, 10th Dist. No. 13AP-287, 2014-Ohio-1846, ¶ 64, quoting *Lundeen v. State Med. Bd. of Ohio*, 10th Dist. No. 12AP-629, 2013-Ohio-112, ¶ 16. Although Ashley asserts her status as a pro se litigant should shift the burden of identifying potential errors to this court, we note that pro se litigants are held to the same standards as those litigants that have retained counsel for

their appeals. *Columbus v. Payne*, 10th Dist. No. 22AP-766, 2023-Ohio-2461, ¶ 6, citing *JP Morgan Chase Bank, N.A. v. Cloyes*, 10th Dist. No. 20AP-107, 2021-Ohio-3316, ¶ 9.

{¶ 21} Because Ashley did not comply with App.R. 16, we decline to address her third and final assignment of error from the divorce decree. App.R. 12(A)(2) ("[t]he court may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A)").

## VI. Contempt Entry First Assignment of Error – Refusal to Disqualify

{¶ 22} In her first assignment of error from the entry finding she failed to purge her contempt, Ashley argues the trial court violated her right to due process when it refused to disqualify from the case due to lack of impartiality.

{¶ 23} As we explained in our analysis of Ashley's first assignment of error from the divorce decree, a fair trial in an impartial tribunal is a basic requirement of due process. *Ramsey* at ¶ 72. "Judicial bias is demonstrated by 'a hostile feeling or spirit of ill will or undue friendship or favoritism toward one of the litigants or his attorney, with the formation of a fixed anticipatory judgment on the part of the judge, as contradistinguished from an open state of mind which will be governed by the law and the facts.' " *Columbus v. Flowers*, 10th Dist. No. 19AP-423, 2019-Ohio-5205, ¶ 25, quoting *State ex rel. Pratt v. Weygandt*, 164 Ohio St. 463, 469 (1956). " 'A judge is presumed not to be biased or prejudiced, and a party alleging bias or prejudice must present evidence to overcome the presumption.' " *Id.*, quoting *Wardeh v. Altabchi*, 158 Ohio App.3d 325, 2004-Ohio-4423, ¶ 20 (10th Dist.).

{¶ 24} Under this assignment of error, Ashley contends the trial court was biased against her in the contempt proceedings because the trial court had already exhibited bias against her in the divorce proceedings when it reviewed her Facebook page and placed her under a gag order. Because of what Ashley deemed a pre-existing bias from the divorce proceedings, Ashley moved for the trial court to disqualify itself from the contempt proceedings. The trial court denied her motion. Ashley now argues the trial court deprived her of due process when it refused to disqualify from the contempt proceedings.

{¶ 25} In our resolution of Ashley's first assignment of error from the divorce proceedings, we determined the trial court did not exhibit a lack of impartiality when it

reviewed Ashley's Facebook postings and ordered her to cease any future posts about the trial or the guardian ad litem. Because the trial court did not exhibit bias in the divorce proceedings, we similarly find the trial court did not deprive Ashley of her due process rights in the contempt proceedings when it refused to disqualify itself. Accordingly, Ashley does not demonstrate the trial court deprived her of her right to due process. We overrule Ashley's first assignment of error from the contempt entry.

**VII. Contempt Entry Second and Third Assignments of Error – Entry and Amended Entry**

{¶ 26} Ashley's second and third assignments of error from the contempt entry are interrelated, and we address them jointly. In her second assignment of error, Ashley argues the trial court erred in failing to include in the entry a determination of whether she purged her contempt. In her third assignment of error, Ashley argues the trial court erred in using Civ.R. 60(A) to correct the contempt entry to reflect a finding that she failed to purge her contempt. Taken together, these two assignments of error assert the trial court erred in using Civ.R. 60(A) to make substantive changes to the original order and that, as a result, the modified order is invalid. Because the original order makes no finding as to whether she purged her contempt, Ashley asserts the original order is also invalid.

{¶ 27} Civ.R. 60(A) provides "[c]lerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time on its own initiative or on the motion of any party and after such notice, if any, as the court orders." An appellate court reviews a trial court's decision to correct a clerical mistake under Civ.R. 60(A) for an abuse of discretion. *Star Merchandise, L.L.C. v. Haehn*, 10th Dist. No. 16AP-39, 2016-Ohio-8018, ¶ 11, citing *State ex rel. Litty v. Leskovyansky*, 77 Ohio St.3d 97, 100 (1996); *Bond v. de Rinaldis*, 10th Dist. No. 16AP-756, 2018-Ohio-930, ¶ 13.

{¶ 28} While Civ.R. 60(A) permits a trial court to exercise its discretion to correct clerical mistakes, the rule does not authorize a trial court to make substantive changes to a judgment. *Star Merchandise* at ¶ 18, citing *Litty* at 100. A clerical mistake is a mistake or omission, mechanical in nature, that is apparent from the record and does not involve a legal decision or judgment. *Id*. A substantive mistake, on the other hand, " ' "consists of instances where the court changes its mind, either because it made a legal or factual mistake

in making its original thought, [or because on second thought] it has decided to exercise its discretion in a different manner." ' " *Id.*, quoting *Whipps v. Ryan*, 10th Dist. No. 14AP-67, 2014-Ohio-5302, ¶ 22, quoting *Lakhi v. Healthcare Choices & Consultants*, *L.L.C.*, 10th Dist. No. 06AP-806, 2007-Ohio-4127, ¶ 36. It is reversible error for a trial court to make a substantive change on the authority of Civ.R. 60(A) as the rule does not authorize substantive changes. *Id.*, citing *Nichols v. Nichols*, 10th Dist. No. 13AP-13, 2013-Ohio-3927, ¶ 12. Thus, the question of whether a change is a clerical change or a substantive change such that Civ.R. 60(A) applies is a question of law we review de novo. *See TBF Fin. L.L.C. v. Wilkerson*, 10th Dist. No. 18AP-974, 2019-Ohio-3493, ¶ 11 (the applicability of a statute is a question of law that we review de novo on appeal).

{¶ 29} Here, in the original judgment entry, filed July 25, 2023, the first sentence of the entry stated: "Ashley N. Zibaie having appeared and having been found guilty of contempt of Court, it is therefore ORDERED, ADJUDGED and DECREED that the aforesaid party be sentenced to 27 days in the Franklin County Jail/Women's Correctional Institute." (July 25, 2023 Jgmt. Entry.) Ashley then filed a Civ.R. 60(B) motion for relief from judgment in which she argued the trial court did not rule on the pending motion because the question before the court was not whether Ashley was in contempt but whether she had purged her contempt. Subsequently, on August 4, 2023, the trial court issued an amended entry to correct what it deemed an unintentional omission pursuant to Civ.R. 60(A), changing the first sentence of the entry to read "Ashley N. Zibaie having appeared and having been previously found in contempt of Court, and having been found to not have complied with conditions of the related purge order, is ORDERED, ADJUDGED and DECREED to be sentenced to 27 days in the Franklin County Jail/Women's Correctional Institute." (Aug. 4, 2023 Amended Entry.) Ashley argues the change in the trial court's sua sponte Civ.R. 60(A) entry was not a mere clerical change but a substantive one. Thus, we must examine the record to determine whether the mistake is apparent from the record such that the change is clerical and within the purview of Civ.R. 60(A).

{¶ 30} Within the divorce decree, the trial court affirmed the magistrate's May 25, 2022 decision finding Ashley in contempt of the temporary order for failing to provide Cyrus with his allotted parenting time. Several months after the divorce decree, on May 19, 2023, Cyrus filed a motion to enforce the jail sentence associated with the contempt finding,

asserting Ashley had not complied with either of the directives by which she could purge her contempt. Despite the framing of the motion as seeking to enforce the jail sentence, Ashley argues the trial court did not consider the issue of whether she had successfully purged her contempt and instead ruled on whether she was in contempt of the temporary order. Ashley notes the trial court stated at the hearing "I'm finding you in contempt of court," and she relies on this statement for her position that the trial court's subsequent Civ.R. 60(A) amended entry was not a mere clerical change. (July 25, 2023 Tr. at 42.)

{¶ 31} Ashley's argument ignores the larger context in which the trial court made that statement. The transcript of the July 25, 2023 hearing on Cyrus' motion indicates the trial court understood the issue before it as Cyrus' motion to enforce the jail sentence and not, as Ashley asserts, as a new hearing on whether Ashley should be found in contempt. As the Supreme Court of Ohio has explained, "a court order finding a party in contempt and imposing a sentence conditioned on the failure to purge is a final, appealable order on the issue whether the party is in contempt of court." *Docks Venture, L.L.C. v. Dashing Pacific Group, Ltd.*, 141 Ohio St.3d 107, 2014-Ohio-4254, ¶ 23. Separately, however, "a contemnor may have an additional appeal on the question whether the purge conditions have been met following execution of sentence on the failure to purge." *Id.*

{¶ 32} Here, the trial court stated at the outset of the hearing that the purpose of the hearing was "a motion filed by [Cyrus] for enforcement of jail sentence filed on May 19th, 2023, and a memo contra filed by [Ashley] on May 21st, 2023." (July 25, 2023 Tr. at 3.) During the hearing, the parties discussed the magistrate's May 25, 2022 decision granting Cyrus' motion for contempt and then discussed the mechanisms through which Ashley could purge her contempt pursuant to the terms of the contempt decision. Cyrus testified that Ashley had neither paid him the $1,500 in attorney fees nor provided him the make-up parenting time. Ashley also testified and questioned Cyrus, providing different justifications as to why she did not provide Cyrus with the make-up parenting time or pay him the attorney fees. After hearing testimony, in ruling on the motion, the trial court reiterated that the magistrate had found Ashley in contempt in the May 25, 2022 decision and that the trial court affirmed the magistrate's decision in the divorce decree. The court then found that Ashley did not remediate the willful violation of the court order within a sufficient amount of time, 60 days after the divorce decree. Thus, the court stated Ashley

was unable to establish "any defense of contempt." (July 25, 2023 Tr. at 42.) It is clear from the record, therefore, that the trial court was ruling on Ashley's failure to purge her contempt. Although the trial court stated at the hearing it was finding Ashley in contempt, the context of the statement indicates the statement was, at worst, an unintentional misstatement and instead is more properly understood as accounting for the secondary hearing necessary in cases of civil contempt where the sanctions are conditional and only imposed where there is a failure to purge the contempt. *See Docks Venture* at ¶ 16; *Sansom v. Sansom*, 10th Dist. No. 05AP-645, 2006-Ohio-3909, ¶ 24 ("[a] sanction for civil contempt must provide the contemnor the opportunity to purge himself or herself of the contempt").

{¶ 33} Based on this record, we find the change made in the amended entry was to correct a clerical mistake and, thus, was appropriate under Civ.R. 60(A). Because the trial court did not err in amending the entry through Civ.R. 60(A), we do not agree with Ashley that the trial court failed to rule on the proper motion. Accordingly, we overrule Ashley's second and third assignments of error from the contempt entry.

## VIII. Contempt Entry Fourth Assignment of Error – Manifest Weight of the Evidence

{¶ 34} In her fourth and final assignment of error from the contempt entry finding Ashley failed to purge, Ashley argues the trial court's judgment entry finding she failed to purge her contempt and sentencing her to 27 days in jail was against the manifest weight of the evidence.

{¶ 35} In a civil case, a reviewing court will not reverse the judgment as being against the manifest weight of the evidence when some competent, credible evidence supports all the essential elements of the case. *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279 (1978), syllabus. In determining whether a civil judgment is against the manifest weight of the evidence, an appellate court is guided by the presumption that the findings of the trial court are correct. *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Id.*

{¶ 36}  At the hearing, Cyrus and Ashley presented opposing testimony as to whether Cyrus had received his make-up parenting time.  Though Ashley now argues the trial court should have deemed her testimony more credible, she cannot show that Cyrus' testimony that he had not received his make-up parenting time and that Ashley had not paid his attorney fees pursuant to the original contempt entry does not constitute some competent, credible evidence going to the essential elements of the case.  Though Ashley disagrees with the credibility and weight determinations the trial court made, we will not second-guess the trial court's credibility determinations.  Thus, the judgment entry finding Ashley did not purge her contempt was not against the manifest weight of the evidence.  We overrule Ashley's fourth and final assignment of error from the contempt entry.

## IX. Disposition

{¶ 37}  Based on the foregoing reasons, the trial court did not deprive Ashley of due process during the divorce proceedings, did not abuse its discretion in allocating parental rights and responsibilities under R.C. 3109.04, did not deprive Ashley of due process in the contempt proceedings, and did not err in amending the contempt entry through Civ.R. 60(A).  Additionally, the judgment entry finding Ashley did not purge her contempt was not against the manifest weight of the evidence.  Having overruled Ashley's first and second assignments of error from the divorce decree, having declined to address Ashley's third assignment of error from the divorce decree for failure to comply with App.R. 16, and having overruled all four of Ashley's assignments of error from the contempt entry, we affirm the judgments of the Franklin County Court of Common Pleas, Division of Domestic Relations.

*Judgments affirmed.*

DORRIAN and JAMISON, JJ., concur.

————————————————